PARK, *Circuit Judge*, dissenting:

This is a straightforward statutory interpretation case. 42 U.S.C. § 1396r(g)(2)(E)(i) states that "Surveys under this subsection" require a registered nurse. The question presented is whether "this subsection" includes § 1396r(g)(4). Although lawyers (and judges) might sometimes use "subsection" to encompass some or all levels of statutory subdivisions smaller than a "section," Congress references subdivisions in accordance with technical drafting rules. Here, "this subsection" refers to subsection (g), and (g)(4) is a part of subsection (g), so nurses are required for any survey under (g)(4).

But the majority avoids this straightforward result. Instead, it asks and then answers a different question: whether surveys conducted under (g)(4) are really "surveys" at all. *See ante*, at 14 (concluding that they are not). And in so doing, the majority rewrites the text of a final rule saying that registered nurses are not required. *See* 82 Fed. Reg. 36,530, 36,531, 36,624-25 (Aug. 4, 2017) ("Final Rule"). Rather than engage in these interpretive gymnastics, I would stop at the plain meaning of the words "this subsection" and reverse the judgment of the district court.

I.

At issue here is one subsection of the Medicaid Act, codified at 42 U.S.C. § 1396r(g). Subsection (g) lays out a scheme for ensuring nursing facilities' compliance with the Medicaid Act. Among other things, it requires states to conduct "surveys"—site visits in which

multidisciplinary teams of professionals evaluate nursing facilities' compliance with statutory and regulatory requirements. *See, e.g., id.* § 1396r(g)(2) (providing for "annual standard surveys," "abbreviated standard surveys," and "extended surveys," among others). Different types of surveys are to be conducted at certain times following specified protocols. *See id.* Particularly important here, § 1396r(g)(2)(E)(i) states that "Surveys under this subsection shall be conducted by a multidisciplinary team of professionals (including a registered professional nurse)." The government argues that "this subsection" refers only to § 1396r(g)(2) and thus does not include surveys conducted in response to specific complaints, which are authorized under § 1396r(g)(4). Plaintiffs say that it refers to all of § 1396r(g), including (g)(4).

Plaintiffs are correct. Congress drafts statutes following a standard hierarchical structure: statutes are split into sections, which are further subdivided into subsections, paragraphs, subparagraphs, clauses, and so on. *See, e.g.*, *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 300 (2017) ("Congress often drafts statutes with hierarchical schemes—section, subsection, paragraph, and on down the line."). This hierarchy is set out in drafting manuals prepared by both House and Senate legislative counsel. *See, e.g.*, Office of the Legislative Counsel, U.S. House of Representatives, *Style Manual; Drafting Suggestions for the Trained Drafter* 21, 47 (1989) ("*1989 House Drafting Manual*"); Office of the Legislative Counsel, U.S. House of Representatives, *House Legislative Counsel's Manual On Drafting Style* 15-16, 39 (2022) ("*2022*

*House Drafting Manual*"); Office of the Legislative Counsel, U.S. Senate, *Legislative Drafting Manual* 10 (1997) ("*1997 Senate Drafting Manual*").

So when Congress refers to a "subsection," it means a top-level subdivision of a section, enumerated with a lowercase letter. *See, e.g.*, *1989 House Drafting Manual* 21; *2022 House Drafting Manual* 15-16. Paragraphs are enumerated with Arabic numerals, subparagraphs with capital letters, clauses with lowercase roman numerals, and so on. So § 1396r(g)(2)(E)(i) describes clause (i) of subparagraph (E) of paragraph (2) of subsection (g) of section 1396r. And when § 1396r(g)(2)(E)(i) refers to "this subsection," it means all of subsection (g), not just paragraph (2).

The district court rejected this reasoning based on its assumption that "Congress chose *not* to follow this traditional hierarchical scheme when drafting the Medicaid Act." *Avon Nursing & Rehab. v. Becerra*, 667 F. Supp. 3d 47, 55 (S.D.N.Y. 2023). The district court stated that Congress used "subsection" in a "loose and imprecise manner, . . . as a shorthand/catchall term for many different internal cross-references, even when the statutory subdivision in question would technically be denominated a paragraph, subparagraph, clause, etc., under the standard hierarchy." *Id.* As an example, the district court pointed to cross-references within § 1396r to "subsection (g)(2)," *see, e.g.*, 42 U.S.C. § 1396r(h)(1), and reasoned that, if Congress meant to employ the standard hierarchy, then it would have written "paragraph (g)(2)" instead of "subsection (g)(2)."

But this misunderstands how Congress cross-references statutory subdivisions.

Standard practice in statutory drafting is to refer to cross-references by the senior-most listed unit—*e.g.*, "subsection (g)(2)" instead of "paragraph (g)(2)" and "paragraph (1)(B)(i)" instead of "clause (1)(B)(i)." *See, e.g., 2022 House Drafting Manual* 39 ("[R]efer to section 5(a)(1) and not paragraph 5(a)(1)."); *1997 Senate Drafting Manual* 43 ("Refer to 'section 123(a)(1)(A) of the ABC Act (YY U.S.C. ZZZ(a)(1)(A))' [not 'subparagraph (A) of paragraph (1) of subsection (a) of section 123 of the ABC Act (YY U.S.C. ZZZ(a)(1)(A))']." (brackets in original)). This approach to cross-references is long-standing and prescribed by legislative drafting manuals dating back to at least 1980. *See* Donald Hirsch, *Drafting Federal Law* 10 (1st ed., U.S. Dep't of Health & Hum. Servs. 1980); *see also* Reed Dickerson, *The Fundamentals of Legal Drafting* 201 (2d ed., Little, Brown & Co. 1986) ("Don't say Paragraph (4) of subsection (c) of section 25[;] Say Section 25(c)(4)."); *1989 House Drafting Manual* 47 ("[R]efer to section 5(a)(1) and not subsection 5(a)(1)."). And so under ordinary drafting rules, when § 1396r(g)(2)(E)(i) refers to "this subsection," it means subsection (g). There is no reason to think that Congress disregarded the standard hierarchy when it drafted § 1396r.

In short, "this subsection" refers to all of § 1396r(g), so the registered-nurse requirement in § 1396r(g)(2)(E)(i) applies to surveys conducted in response to specific complaints under § 1396r(g)(4).

## II.

The majority decides this case on different grounds. It concludes that activities under § 1396r(g)(4) never entail a "survey," making the registered-nurse requirement inapplicable to those activities. *See ante*, at 14.

This is incorrect. Among other things, § 1396r(g)(4) requires states to "investigate complaints of violations of requirements by nursing facilities." One might imagine satisfying this requirement without ever conducting a survey, but the Final Rule does not contemplate such a possibility. In several contexts, the Final Rule requires states to conduct "surveys" in response to complaints. For example, a state "*must* . . . conduct a standard or an abbreviated survey to investigate complaints of violations . . . if its review of the allegation concludes that—(i) A deficiency in one or more of the [Medicaid Act's] requirements may have occurred; and (ii) Only a survey can determine whether a deficiency or deficiencies exist." 82 Fed. Reg. at 36,635-36 (codified at 42 C.F.R. § 488.308(f)(1)) (emphasis added). So the Final Rule requires that states use "surveys" to conduct activities that (g)(4) requires.[1]

---

[1] Not all activities under § 1396r(g)(4) require a "survey." As HHS has explained, it would not "be reasonable or economically feasible to require States . . . to survey all facilities for which complaints are received." 59 Fed. Reg. at 56,159. By not using the word "survey" in (g)(4), Congress preserved flexibility for HHS to require surveys sometimes—but not *always*.

The majority concludes that these surveys are not "surveys" under § 1396r(g)(2)(E)(i) for two reasons. First, the majority says that "survey" refers only "to three specific inspections that must be conducted under 42 U.S.C. § 1396r"–standard surveys, extended surveys, and validation surveys. *See ante*, at 11-12. But the Final Rule requires that these same inspections be used to satisfy the requirements of § 1396r(g)(4). And if a state survey agency must conduct an "abbreviated standard survey" to fulfill its obligations under § 1396r(g)(4)—the same "abbreviated standard survey" it conducts under § 1396r(g)(2) when a nursing facility changes ownership, for example—that "abbreviated standard survey" is no less a "survey" because it is conducted under § 1396r(g)(4).

Second, the majority states that calling activities under § 1396r(g)(4) "surveys" would let "the agency's terminology . . . control our interpretation of the statute." *Ante*, at 13. Not so. The agency is not defining the meaning of a "survey" for us, but merely exercising its authority to "fill up the details of a statutory scheme," *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2263 (2024) (cleaned up), by requiring that states use "surveys" to satisfy certain obligations. It remains our task to "decide whether the law means what the agency says." *Id.* at 2261 (cleaned up). And it makes little sense to conclude that the same investigation is a "survey" when required by § 1396r(g)(2) or (g)(3), but "not a survey" when required by the Final Rule.

The majority concludes that surveys under § 1396r(g)(4) need not include registered nurses on survey teams. That result may or may not be wise policy. But it is not the province of the courts to rule on the wisdom of policy decisions. *See Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 558 (1978). Nor should we reformulate the issues in a case in order to do so. The majority's theory that activities under § 1396r(g)(4) never entail "surveys" is one of its own creation, an argument raised neither by the parties nor the district court. *Cf. United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020).

Our job in this case is to determine whether a challenged agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Medicaid Act states that all surveys must include a registered nurse on survey teams. The Final Rule says the opposite and is thus invalid. I respectfully dissent.